**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **ALESIA B. BRYANT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO.: 1:06-CV-261** |
| | ) | |
| **FORT WAYNE METROPOLITAN** | ) | |
| **HUMAN RELATIONS COMMISSION,** | ) | |
| **GERALD FODAY, Individually and in** | ) | |
| **His Capacity as Director of the Fort** | ) | |
| **Wayne Metropolitan Human Relations** | ) | |
| **Commission, and MAYE JOHNSON,** | ) | |
| **Individually and in Her Capacity as** | ) | |
| **President of the Fort Wayne Metropolitan** | ) | |
| **Human Relations Commission Board,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Alesia B. Bryant brings this suit against her former employer, the Fort Wayne

Metropolitan Human Relations Commission ("METRO"), as well as Gerald Foday, individually

and in his capacity as the Director of METRO, and Maye Johnson, individually and in her

capacity as the President of the METRO Board of Commissioners.[1] Bryant asserts that she was

terminated from METRO because of sex discrimination and retaliation, in violation of Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. She further raises Indiana state law

claims that Foday and Johnson made defamatory comments about her that appeared in various

Fort Wayne publications.

---

[1] The parties have consented to the Magistrate Judge for all purposes. *See* 28 U.S.C. § 636.

On May 14, 2007, the Defendants moved for summary judgment on all claims. (Docket # 16.) Bryant filed a response to the motion for summary judgment on June 14, 2007, supporting her argument with her own verified statement, as well as the verified statement of her attorney. (Docket # 17, 19-23.) On July 2, 2007, the Defendants filed a reply to the motion for summary judgment along with a motion to strike various paragraphs in Bryant's verified statement as well as the belated responses she made to their Requests for Admission. (Docket # 25, 27.) Bryant has not filed a response to the motion to strike.

Because Bryant's opposition to the motion for summary judgment relies upon evidence subject to the Defendant's motion to strike, the Court will first turn to that motion. For the following reasons, both the motion to strike and the motion for summary judgment will be GRANTED.

## II. MOTION TO STRIKE

The Defendants first seek to strike Bryant's denials to their requests for admissions, arguing that because the denials come much too late, the requests should be deemed admitted. The Defendants then argue that because the requests should be deemed admitted, paragraphs seven, nine, ten, eleven, and fourteen of Bryant's verified statement should be stricken because they are in direct conflict with those admissions.[2] The Defendants go on to argue that even if the Court does not strike paragraphs ten and eleven as directly counter to the deemed admissions, they should still be stricken because they contain information that Bryant never disclosed under Federal Rule of Civil Procedure 26(a) and that is barred by the best evidence rule in any event.

---

[2] The Defendants also seek to strike paragraph six of the verified statement but provide no reason for such action. (Mot. to Strike 1.)

2

Finally, the Defendants contend that paragraphs nine, ten, and eleven should be stricken because the statements they contain are conclusory and self-serving. Before turning to these arguments, it is instructive to first recount some procedural history.

## A. Factual and Procedural Background

According to the Report of Parties' Planning Meeting filed on October 5, 2006, the parties agreed to exchange information required by Federal Rule of Civil Procedure 26(a)(1) by October 13, 2006. (Report of Parties' Planning Meeting ¶ 2.) During a preliminary pretrial conference held on October 12, 2006, the Court approved the Report, made it an Order of the Court, and established April 13, 2007, as the deadline for the completion of all discovery. (Docket # 13.)

On January 17, 2007, the Defendants served Bryant with interrogatories, requests for production of documents, and requests for admission, with responses due thirty days later. (V.S. of Kathryn A. Brogan ("Brogan V.S.") ¶ 2, Ex. A.) When Bryant failed to respond, the Defendants' counsel sent Bryant's counsel a letter on March 7, 2007, confirming that the Defendants had received no Rule 26 disclosures, no responses to their discovery requests, and no requests for extension of time. (Brogan V.S. ¶ 5, Ex. B.) The Defendants' counsel made one more observation, "[T]he admissions are now deemed admitted." (Brogan V.S. Ex. B.)

Despite these reminders, and the ominous message that certain admissions were now of record, Bryant still failed to provide the Defendants with her Rule 26 disclosures or any responses to discovery (Brogan V.S. ¶¶ 8, 10), and eventually, the April 13, 2007, discovery deadline came and went. (Brogan V.S. ¶¶ 7, 8.)

On May 14, 2007, the Defendants filed the instant motion for summary judgment, basing

3

many of their arguments on Bryant's purported admissions and the lack of any evidence to support her claim. On June 13, 2007, just one day before filing a response to the motion for summary judgment, and two months after the close of discovery, Bryant's counsel responded to the long overdue discovery, including denials to all of the Defendants' requests for admission.[3] (V.S. of Gregory P. Gadson ("Gadson V.S.") ¶ 4, Ex. A at 21-22.) Bryant's counsel explained that "[t]he slow response to the Defendants' discovery requests were caused by my oversight and inadequate organization, and not done for the purposes of delay, uncooperativeness, or contentiousness." (Gadson V.S. ¶ 7.) Bryant then filed her response to the motion for summary judgment on June 14, 2007, together with her own verified statement, assertions that run head-long into matters the Defendants claim have already been admitted.

The Defendants filed the instant motion to strike on July 2, 2007. (Docket # 25.) As the time for Bryant to respond to that motion has passed, *see* Northern District of Indiana Local Rule 7.1(a), the Court will now proceed to rule.[4]

## B. Discussion

### 1. Bryant's Late Denials Are Stricken

The Defendants first argue that Bryant's belated denials to their requests for admission should be stricken. In that regard, Federal Rule of Civil Procedure 36(a) provides: "A party may serve upon any other party a written request for the admission . . . of the truth of any matters . . .

---

[3] Apparently, however, Bryant still has not made any Rule 26 disclosures. (Defs.' Mem. in Supp. of Mot. to Strike 6.)

[4] In fact, Bryant's failure to respond exposes her to a "summary ruling" pursuant to Local Rule 7.1(a). *See* N.D. Ind. R. 7.1(a) ("Failure to file a response . . . within the time prescribed may subject the motion to summary ruling."); *Taylor v. Lifetouch Nat'l Sch. Studios, Inc.*, 490 F. Supp. 2d 944, 950 (N.D. Ind. 2007) (granting the defendant's motion to strike because the plaintiff failed to respond); *Hardiman v. Davita, Inc.*, No. 2:05-CV-262-JM, 2007 WL 1395568, at *9 (N.D. Ind. May 10, 2007) (same).

set forth in the request that relate to statements or opinions of fact or of the application of law to fact . . . ."  The Rule then states: "The matter is admitted unless, within 30 days after service of the request, . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection . . . ." Thus, Rule 36 is "self-executing, meaning that no court intervention is required for an admission to be established. Instead, unanswered requests for admissions are automatically deemed admitted with the passage of the deadline to respond." *Lawson v. Diehl Macs., Inc.*, No. 3:98-CV-194RP, 1999 WL 325064, at *3 (N.D. Ind. Apr. 16, 1999); *see also Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1059 (7th Cir. 2000) (deeming the defendant's requests for admission admitted when the plaintiff failed to respond within the time allotted). Accordingly, because Bryant failed to respond to the Defendants' requests within the time allotted, the matters there were automatically admitted under Rule 36.

Moreover, by simply submitting a tardy denial, Bryant jumped over the requirement that she first file "a motion under Rule 36(b) to withdraw admissions." *Kalis*, 231 F.3d at 1059 (quoting *United States v. Kasuboski*, 834 F.2d 1345, 1349 (7th Cir. 1987)); *see also* Fed. R. Civ. P. 36(b) ("Any matter admitted under this rule is conclusively established unless the court *on motion* permits withdrawal or amendment of the admission." (emphasis added)). The omission can prove fatal.

To explain, in *Kalis* the plaintiff failed to respond to the defendant's requests for admission within thirty days after service and instead waited seven months to submit contemporaneous denials in conjunction with her response to the defendant's motion for summary judgment. *Kalis*, 231 F.3d at 1052-53, 1059. The District Court struck Kalis's belated responses, noting in particular the absence of any motion to withdraw the default admissions. *Id.*

at 1059; *Kalis v. Colgate Palmolive Co.*, No. 95 C 7673, 1999 WL 417463, at *3 (N.D. Ill. June 18, 1999). The Seventh Circuit affirmed the District Court's action as a proper exercise of the Court's discretion. *Kalis*, 231 F.3d at 1059.

Therefore, with no motion to withdraw the admissions the denials are clearly subject to being stricken, particularly since they were grossly late, counsel knew months ago that the Defendants were deeming the matters admitted, and the summary judgment motion hinges on that legal proposition. Stated a somewhat different way, to allow the denials to stand without any clear basis for understanding the less than clear reason for their tardiness (let alone being able to ascribe good cause or excusable neglect to that reason) would be to reward "oversight and inadequate organization" over diligence. Consequently, the late denials will be stricken.

*2. The Paragraphs in Bryant's Verified Statement That Conflict with the Admissions Are Stricken*

The Defendants next contend that paragraphs seven, nine, ten, eleven, and fourteen of Bryant's verified statement must be stricken because they conflict with matters "conclusively established" under Federal Rule of Civil Procedure 36(b). Thus, "[o]nce an admission is made, it must be given preclusive effect, even if the result is to deprive the parties of the opportunity to contest the facts of the case." *Walker v. Reith-Riley Constr. Co.*, No. 2:03-CV-507 PS, 2006 WL 467911, at *3 (N.D. Ind. Feb. 27, 2006) (citing *McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003); *Kasuboski*, 834 F.2d at 1350). In fact, "[a]ffidavits . . . entered in opposition to summary judgment that attempt to establish issues of fact cannot refute default admissions."[5]

---

[5] The Seventh Circuit articulated the following policy reasons for such a rule:
Rule 36 allows parties to narrow the issues to be resolved at trial by effectively identifying and eliminating those matters on which the parties agree. This function would be lost if parties were permitted to contest under Rule 56 a matter concluded under Rule 36. As the advisory committee observed, "[u]nless the party securing an admission can depend on its binding effect, he [or she] cannot safely avoid the expense of preparing to prove the very matters on which he [or she] has

*Kasuboski*, 834 F.3d at 1350 (finding that the parties' "attempt to undo the effect of their default admissions" by attaching an affidavit to their response brief fails "because a party cannot attack issues of fact established in admissions by resisting a motion for summary judgment").

Here, paragraphs seven, nine, ten, eleven, and fourteen of Bryant's verified statement must be stricken, as they attempt to refute matters conclusively established by the default admissions. Specifically, Bryant admitted that she had "no evidence that [she was] terminated in retaliation for [her] participation in any alleged protected activity." (Brogan V.S. Ex. A at 18.) She now, however, apparently contends that she has such evidence, that is, her verified statement that "[d]uring the summer of 2004, . . . Foday in the presence of myself and other METRO staff members, threatened retaliation against any METRO employees who would make accusations of sexual impropriety against him . . . , stating among other things that he was 'going to confront the staff who made sexual allegations against him[.]'" (V.S. of Alesia B. Bryant ("Bryant V.S.") ¶ 7.)

Likewise, although Bryant admitted that she had "no evidence that [her] sex was a motivating factor in METRO's decision to fire [her]" (Brogan V.S. Ex. A at 18), she now submits in her verified statement (presumably as some evidence of sex discrimination) that "[d]uring [her] tenure at METRO, [she] witnessed female employees being terminated for infractions which did not lead to the termination of male employees[.]" (Bryant V.S. ¶ 9.)

She also admitted that she had "no evidence that any false statements were made by any Defendant" (Brogan V.S. Ex. A at 19), but now maintains that Foday and Johnson made false

---

secured the admission, and the purpose of the rule is defeated." Fed.R.Civ.P. 36 advisory
committee's note.
*Kasuboski*, 834 F.2d at 1350.

statements about her in various Fort Wayne publications. (Bryant V.S. ¶¶ 10-11.)

Finally, contrary to Bryant's admission that she "did not file [her] Federal District Court complaint in this action within ninety (90) days of [her] receipt of the EEOC Notice of Right to Sue dated April 18, 2006" (Brogan V.S. Ex. A at 18), Bryant now asserts that "[u]pon information and belief, [it] was filed within ninety days from my receipt of my EEOC Notice of Right to Sue." (Bryant V.S. ¶ 14.)

Accordingly, paragraphs seven, nine, ten, eleven, and fourteen of Bryant's verified statement will be stricken, as they conflict with the default admissions.[6] Moreover, Bryant cannot complain about the ostensible harsh effect of this outcome as it "is tempered by the availability of [a] motion to withdraw admissions, a procedure which [Bryant] did not employ." *Kasuboski*, 834 F.2d at 1350.

### 3. The References to Undisclosed Documents Are Stricken

Moreover, the Defendants provide an additional basis for striking paragraphs ten and eleven of Bryant's verified statement: Because Bryant never made any pretrial disclosures, the Defendants were unaware that she might use the news articles referenced in those paragraphs to support her defamation claim.[7] In that regard, Federal Rule of Civil Procedure 26(a)(1)(B)

---

[6] Because the Court concludes that paragraphs nine, ten, and eleven must be stricken, the Court need not address the Defendants' alternative argument that these paragraphs should be stricken because they are conclusory and self-serving.

[7] Specifically, paragraph ten of Bryant's verified statement provides:
During the winter of 2005 and beyond, I observed false printed statements by the Defendant Foday in Fort Wayne area publications, including the *News Sentinel* (Fort Wayne), *Journal Gazette* (Fort Wayne), *Frost Illustrated* (Fort Wayne), and *Ink* (Fort Wayne), when Defendant Foday stated, *inter alia* beginning on page 1A of the January 28, 2005 issue of the *Journal Gazette*, that I could not perform the tasks required of me, and that I "just did not meet those expectations[.]"
(Bryant V.S. ¶ 10.)
Moreover, paragraph eleven states:
During the winter of 2005 and beyond, I observed false printed statements by the Defendant Maye

8

requires that "a party must, without awaiting a discovery request, provide to other parties . . . a copy of, or a description by category and location of, all documents . . . that the disclosing party may use to support its claims or defenses . . . ." Furthermore, Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence . . . on a motion . . . information not so disclosed." Accordingly, "the sanction of exclusion [under Rule 37(c)(1)] is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Westefer v. Snyder*, 422 F.3d 570, 584 n.21 (7th Cir. 2005) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)). The following factors are guides to determining whether a Rule 26(a) violation is substantially justified or harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.* (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

Here, because Bryant has filed no response to the motion to strike, she has offered no argument that her failure was substantially justified or harmless. In fact, the only thing we have in the record touching on the issue is her attorney's verified statement that "[t]he slow response to the Defendants' *discovery requests* were caused by my oversight and inadequate organization,

---

Johnson in Fort Wayne area publications, including the *News Sentinel* (Fort Wayne), *Journal Gazette* (Fort Wayne), *Frost Illustrated* (Fort Wayne), and *Ink* (Fort Wayne), implying that I was unqualified, unskilled, and unprofessional by stating, *inter alia* beginning on page 1A of the January 28, 2005 issue of the *Journal Gazette*, "We have a responsibility to the taxpayers to uphold the law for everyone in the community and we can only do that with a qualified, skilled, professional staff[.]"

(Bryant V.S. ¶ 11.) Of course, as noted earlier, these paragraphs have already been stricken.

and not done for the purposes of delay, uncooperativeness, or contentiousness."[8] (Gadson V.S. ¶ 7 (emphasis added).) Of course, although this statement makes no mention of Bryant's failure to provide initial disclosures, now months overdue, even if we were to consider it as an attempt to show substantial justification, it falls well short. *See Reddick v. Bloomingdale Police Officers*, No. 96 C 1109, 2003 WL 1733560, at *15 (N.D. Ill. Apr. 1, 2003) ("[I]nadvertence is no excuse for [the] failure [to disclose].").

And it certainly cannot be argued that the failure to disclose is harmless. After all, Bryant's failure to disclose any information related to her defamation claim undoubtedly resulted in prejudice and surprise to the Defendants. *See In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*, No. 3:05-MD-527 RM (MDL-1700), 2007 WL 2128164, at *5 (N.D. Ind. July 23, 2007) ("The most crucial factor to weigh is the prejudice to the parties."). The problem is compounded by the fact that Bryant provided the Defendants with no discovery until well-after the close of discovery, and then only on the eve of her response to the motion for summary judgment. Thus, the Defendants had very little information regarding the precise factual basis for Bryant's defamation claim until two months after the close of discovery and one month after filing their motion for summary judgment.[9] *Cf. Millard v. McBrid*e, No. 2:04 CV 8, 2007 WL 2068568, at *3 (N.D. Ind. July 16, 2007) (noting that automatic exclusion is sometimes denied when the information was already known or "the disclosure was late by only trivial amounts of time" (citing *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000); *Musser v.*

---

[8] According to the Defendants, the articles were not in these discovery responses and have yet to be disclosed. (Defs.' Mem. in Supp. of Mot. to Strike 6; Brogan V.S. Ex. A at 16.)

[9] Indeed, Bryant's complaint, while generally outlining the contents of the alleged defamatory statements, gives no indication when they were made and merely offers that they were "published in newspapers and electronic media." (Compl. ¶¶ 24-33.)

*Gentiva Health* Servs., 356 F.3d at 758-59 (7th Cir. 2004))).

Furthermore, as the Defendants argue, it would be difficult to remedy the prejudice caused by the newly discovered information contained in Bryant's verified statement because that "would require a reopening of discovery [and] possibly a new motion for summary judgment . . . ." (Defs.' Mem. in Supp. of Mot. to Strike 8); *see Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, No. 05 C6022, 2007 WL 2156665, at *11 (N.D. Ill. July 26, 2007) ("Disclosure came after the close of discovery, and as a consequence, the prejudice to the defendants is irremediable, unless discovery is to be reopened with the obvious disruption of the pending summary judgment proceedings."). Moreover, with the trial set for less than two months from now (*see* Docket # 15), it is a virtual certainty that any reopening of discovery (along with the corresponding likelihood that the motion for summary judgment would need to be renewed), would certainly disrupt the trial date.[10]

The Defendants do not contend that the fourth factor, bad faith, is present here, but that is not essential, particularly where the first three factors overwhelmingly point to exclusion. *See Fast Food Gourmet, Inc.*, 2007 WL 2156665, at *11 (collecting cases). Accordingly, paragraphs ten and eleven of Bryant's verified statement are stricken under Rule 37(c).[11]

### C. Conclusion

In sum, the Court grants the Defendants' motion to strike Bryant's belated denials to the

---

[10] Although the Defendants never took Bryant's deposition, this was undoubtedly due to her default admissions and the lack of any initial disclosures. (*See* Defs.' Mem. in Supp. of Mot. to Strike 4.) To now allow Bryant a *post hoc* reconstruction of the record would clearly be prejudicial to the Defendants as they would likely have to request a continuance of the trial so they could, at a minimum, depose Bryant.

[11] Given the ruling on the motion to strike, the Court need not consider the argument that paragraphs ten and eleven should also be stricken under the best evidence rule.

11

requests for admission, as well as paragraphs seven, nine, ten, eleven, and fourteen of her

verified statement, and turns now to consider the motion for summary judgment.

### III. MOTION FOR SUMMARY JUDGMENT

### A. Factual Background[12]

Bryant began working for METRO as an investigator in 1998 and was eventually

promoted to the position of Chief Investigator in December 1999. (Bryant V.S. ¶¶ 3-4.) In 2001,

Foday joined METRO's staff as "Legal Investigator/Legal Counsel," a position with no

supervisory authority over Bryant. (V.S. of Gerald Foday ("Foday V.S.") ¶¶ 3-4.) Instead, both

Foday and Bryant reported to METRO's Executive Director. (Foday V.S. ¶ 3.)

During the spring and summer of 2004, Bryant participated in an investigation

concerning a sexual harassment claim launched against Greg Shade, METRO's Executive

Director.[13] (Bryant V.S. ¶ 5; Gadson V.S. Ex. A at 5.) Specifically, in the days leading up to

Shade's eventual termination, Bryant spoke with personnel in the City of Fort Wayne Human

Resources Department, the METRO Board of Commissioners, and Employee Assistance

concerning "any sexual accusations or allegations of any manner that had come to [her]

---

[12] For summary judgment purposes, the facts are recited in the light most favorable to Bryant, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Insofar as Bryant does not controvert the facts asserted by the Defendants in their statement of "Undisputed Material Facts," those facts "are admitted to exist without controversy" as set forth below. *See* N.D. Ind. R. 56.1.

Although the Court struck much of Bryant's evidence *supra*, Part II, her answers to the Defendants' interrogatories are part of the record (Gadson V.S. Ex. A), as they were unchallenged by the Defendants' motion to strike. Accordingly, her interrogatory answers will be considered in ruling on the motion for summary judgment. *See Burrell v. City of Mattoon*, 378 F.3d 642, 646 (7th Cir. 2004) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) [depositions, answers to interrogatories, admissions on file, and affidavits], *except the mere pleadings themselves* . . . ." (brackets in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986))).

[13] The Defendants maintain that this investigation was a result of an internal complaint filed by a "Ms. Hicks," who claimed that Shade made an inappropriate comment to her. (V.S. of Maye Johnson ("Johnson V.S.") ¶ 12.) According to the Defendants, Hicks reported the comment to Bryant, who relayed this information to METRO's Commissioners. (Johnson V.S. ¶¶ 8-9.)

attention."[14] (Bryant V.S. ¶ 6; Gadson V.S. Ex. A at 5.) After Shade's termination, Foday seems to have taken on the role of Executive Director. Indeed, Bryant maintains that after Shade's departure, she was told by staff members that Foday planned on demoting or terminating her because of her participation in the investigation, and so on September 2, 2004, she resigned as Chief Investigator, returning to the position of a line investigator "in the hope it would save [her] job . . . ." (Brogan V.S. Ex. C at 2; Gadson V.S. Ex. A at 5.)

Moreover, Bryant reported in her EEOC Charge of Discrimination that shortly thereafter, on September 8, 2004, Foday hypothesized at a staff meeting that if any members of the staff made sexual allegations against him, he would confront them about it. (Brogan V.S. Ex. C at 2.)

In mid-November 2004, Foday was formally appointed as the Executive Director of METRO. (Johnson V.S. ¶ 16.) That same month, he received a citizen complaint about Bryant stemming from her refusal to accept and process a charge of discrimination. (Foday V.S. ¶ 12.) After another citizen voiced a similar complaint in January 2005, Foday performed an audit of intake records, which revealed that Bryant had completed only five intakes during 2003-2004. (Foday V.S. ¶ 12-13.) This "very low" number of intakes led Foday to suspect that Bryant had refused other citizens' charges, a suspicion that was confirmed when Foday spoke with other staff members. (Foday V.S. ¶ 15.) This problem concerned Foday not only because citizens had been denied their right to file charges of discrimination, but also because Bryant had jeopardized METRO's work sharing agreement with the EEOC, which requires METRO to process *all*

---

[14] According to Bryant's Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination, "[t]he city's investigation found Mr. Shade's conduct to be improper and he was terminated in July 2004." (Brogan V.S. Ex. C at 2.) The Defendants, however, maintain that there was no merit to the sexual harassment claim and that Shade was terminated in June 2004 because of various "managerial issues and personnel problems[.]" (Johnson V.S. ¶¶ 13-14.) The dispute is immaterial to the ruling on the motion for summary judgment.

citizen complaints. (Foday V.S. ¶ 13.)

Foday also came to view Bryant as having poor grammar and writing skills. (Foday V.S. ¶ 17.) Foday sought to address this deficiency by sending her to a seminar in Washington D.C. that included writing courses, but Bryant complained that the training was a waste of time and the curriculum was elementary. (Foday V.S. ¶ 17.) Foday also observed from Bryant's employment records that another Executive Director had recommended to Bryant that she take a business writing class at a local college at METRO's expense, but Bryant never enrolled in the course. (Foday V.S. ¶ 17.) This apparent lack of interest in self-improvement concerned Foday, because he believed that Bryant did not possess the skills needed to perform her job effectively and was apparently unwilling to acquire them. (Foday V.S. ¶ 17.)

In February 2005, Foday, who had no authority to terminate METRO employees, recommended to the Board of Commissioners that Bryant be terminated for cause based on what he deemed was negligent performance. (Foday V.S. ¶¶10, 16, 23, Ex. B; Johnson V.S. ¶¶ 3-4.) After discussion, the Board voted 4-2 on February 14, 2005, to terminate Bryant's employment. (Foday V.S. ¶ 18; Johnson V.S. ¶ 5.) According to Johnson, she voted to terminate Bryant because in addition to the problems outlined by Foday, she had personally observed Bryant's poor oral and written communication skills and because METRO had received many complaints in the past from citizens, respondents, and attorneys about Bryant's "confrontational, bullying style." (Johnson V.S. ¶ 6.)

Foday subsequently notified Bryant of the Commissioners' decision and advised her of her right to request a hearing to appeal the decision. (Foday V.S. ¶ 19.) Although Bryant requested a hearing, she did not attend the one subsequently scheduled for March 21, 2005,

(Foday V.S. ¶ 20), and on March 29, 2005, Foday informed Bryant that the decision to terminate her had become final. (Foday V.S. ¶ 20.)

At the time of Bryant's termination, two other female employees were also terminated by the Board. (Foday V.S. ¶¶ 24-27.) Foday recommended the termination of those employees because they had falsified employment records. (Foday V.S. ¶ 24.) Specifically, one employee had omitted an employer from her employment application, and the other employee, who previously received a last chance warning for insubordination, had submitted false mileage reimbursement records to the City. (Foday V.S. ¶ 24.) Eventually, Bryant and the two other women were replaced by female applicants. (Foday V.S. ¶ 28.)

In support of her claim of discrimination, Bryant provides two performance evaluations prepared by Shade on November 26, 2002, and October 28, 2003, rating her performance as "Exceed[ing] Requirements" and "Superior." (Bryant V.S. ¶ 12, Ex. A.) Moreover, she contends that she never received a formal performance appraisal from Foday nor any feedback from anyone at METRO prior to her termination. (Bryant V.S. ¶ 13.) In addition, she maintains that "[m]ale employees were treated more favorably, including the lack of termination or discipline for similar situations." (Gadson V.S. Ex. A at 5-6.)

Finally, as noted at note 7 *supra*, Bryant complains about alleged defamatory statements by Foday and Johnson that appeared in various Fort Wayne publications around the time of her dismissal. (Gadson V.S. Ex. A at 6-9.)

**B. Procedural Background**

On May 27, 2005, Bryant filed a charge of discrimination against METRO and the City of Fort Wayne based on sex discrimination and retaliation. (Brogan V.S. Ex. C.) The EEOC

subsequently issued a Notice of Right to Sue letter on April 18, 2006. (Compl. ¶ 19.) Ninety-four

days later, on July 21, 2006, Bryant filed her claims of sex discrimination and retaliation in this

Court. (Docket # 1.) Nevertheless, her attorney states that "[t]his lawsuit was filed upon

information and belief that its filing was within ninety days calculated from the date the Plaintiff

believed she received the April 18, 2007 Notice of Right to Sue from the [EEOC.]" (Gadson

V.S. ¶ 6.)

Concerning her state law claim of defamation, Bryant served the Defendants with a copy

of a "Tort Claim Notice" on June 13, 2007. (Gadson V.S. ¶ 5, Ex. 5.)

Finally, as observed earlier, Bryant has effectively admitted that she: (1) did not file a

notice of tort claim with METRO (Request for Admission No. 1); (2) did not file her complaint

in this action within ninety days of her receipt of the EEOC Notice of Right to Sue (Request for

Admission No. 2); (3) has no evidence that sex was a motivating factor in her termination

(Request for Admission No. 3); (4) has no evidence that she was terminated in retaliation for her

participation in any alleged protected activity (Request for Admission No. 4); (5) has no

evidence that any false statements were made by any Defendant (Request for Admission No. 5);

and (6) has no evidence that any Defendant made any statement with malice (Request for

Admission No. 6). (Brogan V.S. Ex. A at 18-19.)

### C. Standard of Review

Summary judgment may be granted only if there are no disputed genuine issues of

material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court

"may not make credibility determinations, weigh the evidence, or decide which inferences to

draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for

16

summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

### D. Discussion

#### 1. Bryant's Title VII Claims Are Time-Barred

The Defendants first argue that summary judgment should be granted on Bryant's Title VII sex discrimination and retaliation claims because she did not file her lawsuit within ninety days of receipt of the EEOC Notice of Right to Sue. In that regard, Title VII provides that the EEOC shall notify the person aggrieved of her right to sue "and [that] within ninety days after the giving of such notice, a civil action may be brought." 42 U.S.C. § 2000e-5(f)(1). The Seventh Circuit has determined that "actual receipt of the notice is required to start running the 90-day clock." *Reschny v. Elk Grove Plating Co.*, 414 F.3d 821, 823 (7th Cir. 2005) (citing *Archie v. Chicago Truck Drivers*, 585 F.2d 210, 216 (7th Cir. 1978)). The ninety-day filing deadline is a "'condition[] precedent,' similar to statutes of limitations . . . ." *Perkins v. Silverstein*, 939 F.2d 463, 469-70 (7th Cir. 1991). Thus, a "defendant's argument that a discrimination claim is untimely because it was filed outside the 90-day statute of limitations is . . . an affirmative

defense." *Del Korth v. SuperValu, Inc.*, 46 F.App'x 846 (7th Cir. 2002) (citing Fed. R. Civ. P. 8(c); *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993)).

Accordingly, the Defendants bear the burden of establishing that Bryant failed to file her lawsuit before the ninety-day deadline. *See, e.g.*, *Zenith Elecs. Corp. v. Panalpina, Inc.*, 68 F.3d 197, 201 (7th Cir. 1995) (noting that the defendant bears the burden of establishing an affirmative defense). Although the Defendants' argument that Bryant filed this lawsuit ninety-four days after the *issuance* of the EEOC's Notice of Right to Sue is not enough to carry their burden, *see Reschny*, 414 F.3d at 823, the Defendants have another, more powerful weapon in their arsenal–Bryant's admission that she "did not file [her] Federal District Court complaint in this action within ninety (90) days of [her] *receipt* of the EEOC Notice of Right to Sue dated April 18, 2006." (Brogan V.S. Ex. A at 18 (emphasis added).) This admission conclusively establishes that Bryant's sex discrimination and retaliation claims are time-barred. *See* Fed. R. Civ. P. 36(b) ("Any matter admitted under [Rule 36] is *conclusively established* . . . ." (emphasis added)); *Walker*, 2006 WL 467911, at *3 ("Once an admission is made, it must be given preclusive effect . . . .").

Because of Bryant's admission, her attorney's verified statement cannot save her Title VII claims. *See Kasuboski*, 834 F.2d at 1350 ("Affidavits . . . entered in opposition to summary judgment . . . cannot refute default admissions."). But even if the Court were to consider the statement of counsel, it is still insufficient to establish, or even raise an issue of fact concerning, whether the lawsuit was timely filed. To explain, her attorney stated that "[t]his lawsuit was filed *upon information and belief* that its filing was within ninety days calculated from the date the Plaintiff believed she received the April 18, 2007 Notice of Right to Sue from the [EEOC.]"

(Gadson V.S. ¶ 6 (emphasis added).) Federal Rule of Civil Procedure 56(e) provides that affidavits "shall be made on personal knowledge"; therefore, "affidavits based on 'information and belief'–facts that the affiant believes are true, but which the affiant does not know are true–are not proper." *Abdullah v. Frank*, No. 04C1181, 2007 WL 636185, at *5 (E.D. Wis. Feb. 26, 2007) (citing *Toro Co. v. Krouse, Kern & Co., Inc.*, 827 F.2d 155, 162-63 (7th Cir. 1987); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987)); *see also Weiss v. Cooley*, 230 F.3d 1027, 1034 (7th Cir. 2000) (noting that an affidavit that stated various facts "on information and belief" was "not enough to satisfy the personal knowledge requirement for affidavits").

In addition, the remainder of her attorney's statement clearly reveals that he did not have "personal knowledge" of when the notice was received, as he explains that the lawsuit was filed ninety days from the date that Bryant "believed" she received the notice. Thus, the verified statement is ostensibly based on Bryant's inadmissible hearsay statement concerning when she believed she received notice, not on the attorney's personal knowledge of when notice was received. *See Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001) (noting that an affidavit based on hearsay is "inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial").

Accordingly, because Bryant failed to file her lawsuit within ninety days of receiving notice from the EEOC, her Title VII claims instantly collapse.[15] Nevertheless, so as to complete the record, the Court will proceed to address the merits of Bryant's Title VII claims.

---

[15] Moreover, insofar as Bryant is asserting Title VII claims against Foday and Johnson, these claims also fail as a matter of law because "only an 'employer' is covered by that statute." *Carver v. Sheriff of LaSalle County, Ill.*, 243 F.3d 379, 381 (7th Cir. 2001) (citing *Williams v. Banning*, 72 F.3d 552 (7th Cir.1995)). Thus, "the suit must proceed against the employer as an entity rather than against a natural person." *Id.*

### 2. Bryant's Sex Discrimination Claim Fails

A plaintiff alleging employment discrimination under Title VII can contest summary judgment by using either the direct or indirect method of proof. *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). The direct method requires the plaintiff to produce enough evidence, either direct or circumstantial, "that could permit a reasonable jury to conclude that the employer acted with discriminatory intent . . . ." *Id.*

The indirect method is the well-known *McDonnell Douglas* burden-shifting framework. *See, e.g.*, *id.* Here, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). For Title VII claims, the *prima facie* case requires four showings: (1) the plaintiff was a member of a protected class; (2) the plaintiff was meeting the employer's legitimate expectations; (3) the plaintiff suffered an adverse employment action; and (4) similarly-situated employees who were not members of the plaintiff's protected class were treated more favorably. *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 558 (7th Cir. 2006). If the plaintiff successfully establishes a *prima facie* case, the burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802. Once the defendant has done so, the burden shifts back to the plaintiff to show that the proffered reason is merely a pretext for discrimination. *Id.* at 804.

Here, Bryant's entire argument supporting her sex discrimination claim reads as follows: "With respect to sex discrimination, the Plaintiff affirms her charge that she and other female METRO employees were treated in an improper discriminatory fashion, as supported by her Complaint, her answers to interrogatories, and her Verified Statement (¶ 9.)" (Mem. in Supp. of

Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Resp. Br.") 4.) Nothing in the materials referred to by

Bryant indicates that she is proceeding under the direct method of discrimination, that is, she

provides no direct or circumstantial evidence "that could permit a reasonable jury to conclude

that the employer acted with discriminatory intent . . . ." *Brewer*, 479 F.3d at 915. Moreover,

Bryant admits that she has "no evidence that [her] sex was a motivating factor in METRO's

decision to fire [her]." (Brogan V.S. Ex. A at 18.) Accordingly, the Court will analyze Bryant's

case under the indirect method.

Pursuant to the *McDonnell Douglas* framework, METRO concedes for purposes of

summary judgment that Bryant is able to establish the first and third elements of her *prima facie*

case of sex discrimination, leaving only the second and fourth elements in dispute.

The Court agrees with METRO that Bryant fails to establish the second element of her

*prima facie* case–that she was meeting the legitimate expectations of her employer. In that

regard, the only evidence that Bryant produces are two old performance evaluations prepared on

November 26, 2002, and October 28, 2003, rating her performance as "Exceed[ing]

Requirements" and "Superior." (Bryant V.S. ¶ 12, Ex. A.) These alone, however, are insufficient

to raise a genuine issue of material fact, as they were conducted more than a year before the

events that led Foday to recommend Bryant's termination, namely METRO's receipt of two

citizen complaints. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 315, 329 (7th Cir. 2002)

(deeming plaintiff's favorable performance reviews unpersuasive because the issue is not the

employee's past performance, but whether the employee was performing well at the time of the

adverse employment action).

Moreover, Bryant's *prima facie* case also crumbles on the fourth element–that similarly-

situated employees who were not members of Bryant's protected class were treated more favorably than her. To be "similarly situated," a plaintiff must show that another employee is "directly comparable to her in all material respects." *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006) (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)). Specifically, the plaintiff must show that she and the other employee are comparable "in regard to performance, qualifications, and conduct," which "normally entails a showing that the [comparable] employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Anders v. Waste Mgmt. of Wis.*, 463 F.3d 670, 676 (7th Cir. 2006).

Here, Bryant fails to identify with any specificity a similarly-situated male employee who was treated more favorably; instead, she simply makes a vague and conclusory reference to unidentified male employees, asserting that "[m]ale employees were treated more favorably, including the lack of termination or discipline for similar situations." (Gadson V.S. Ex. A at 5-6.) In short, Bryant cannot establish the fourth element of her *prima face* case by vaguely referring to unidentified male employees and making conclusory allegations that they were treated better than her. *See Anders*, 463 F.3d at 676 ("While [the plaintiff] claims . . . that there were four . . . comparable . . . employees who engaged in analogous acts of aggression, the record is devoid of any information as to the specifics of their actions, their supervisor, or any mitigating circumstances"); *Ferguson v. Robert R. McCormick Tribune Found.*, 108 F. Supp. 2d 1033, 1039 (N.D. Ill. 2000) (emphasizing that the plaintiff failed to establish the similarly-situated element of her race discrimination claim when she simply referred to unidentified African American

22

employees who were not disciplined like her); *Campbell v. Dominick's Finer Foods, Inc.*, 85 F.
Supp. 2d 866, 872 (N.D. Ill. 2000) (noting that the plaintiff "simply referr[ed] to an unidentified
[comparison] employee"). "Absent evidence that these unidentified persons were similarly
situated and engaged in materially similar misconduct, [a] [p]laintiff cannot survive summary
judgment . . . ." *Campbell*, 85 F. Supp. 2d at 872.

By neglecting to shoulder her burden with respect to the second and fourth elements,
Bryant fails to establish a *prima facie* case of sex discrimination, and thus cannot survive the
Defendants' motion for summary judgment. Nevertheless, even if Bryant could establish a *prima
facie* case of discrimination, her claim still fails because she does not demonstrate that the
proffered reason for firing her was pretextual.

Stated simply, METRO provides a legitimate, nondiscriminatory reason for Bryant's
termination, namely, her poor job performance. In that regard, METRO points to the two citizen
complaints and Foday's subsequent investigation of the intake records that led METRO's Board
of Commissioners to conclude that Bryant was inappropriately refusing citizen complaints.
Moreover, METRO points to Bryant's poor oral and written communications skills and her
apparent disinterest in improving them as another reason for her termination.

Since METRO articulated a legitimate, nondiscriminatory reason for Bryant's
termination, the burden shifts to Bryant to provide evidence that the reasons for her termination
were pretextual. *McDonnell Douglas*, 411 U.S. at 805. The focus for such an inquiry is "whether
the employer's stated reason was honest, not whether it was accurate, wise, or well-considered."
*Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006) (quoting *Stewart v. Henderson*,
207 F.3d 374, 378 (7th Cir. 2000)); *see also Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417

(7th Cir. 2006) ("[T]he question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground."). Simply put, pretext is "a deliberate falsehood." *Forrester*, 453 F.3d at 419.

Bryant seems to suggest that pretext can be inferred from the fact that two other female employees were terminated at the same time as her. This evidence, however, is insufficient to establish pretext, as "[p]laintiffs must do more than merely point to [sex] and proclaim: 'Aha! Discrimination.'" *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 829 (7th Cir. 2006). In *Hague*, a case of race discrimination, the Seventh Circuit rejected the plaintiffs' argument that pretext could be inferred from the fact that an African-American business owner simultaneously fired all five Caucasian employees and replaced them with African-American employees. *Id.* at 828-29. The Court wrote that "at best, such evidence was anecdotal, and . . . we 'cannot find discrimination on such a thin basis.'" *Id.* at 829 (quoting *Millbrook v. IBP, Inc.*, 280 F.3d 1176-77 (7th Cir. 2002)). In fact, Bryant's basis for pretext is even thinner, as METRO replaced all three women with females. Thus, Bryant fails to demonstrate how METRO's proffered reasons for firing the three women were pretextual and designed to hide sex discrimination.

In sum, Bryant fails to make out a *prima facie* case of sex discrimination, nor does she demonstrate that METRO's proffered reasons for terminating her are merely a pretext for discrimination. Accordingly, her sex discrimination claim fails, and the Court now turns to her retaliation claim.

### 3. Bryant's Retaliation Claim Fails

Like discrimination claims, a plaintiff alleging retaliation under Title VII can contest summary judgment by using either the direct or indirect method of proof. *Bernier v. Morningstar, Inc.*, No. 06-1617, slip op. at 10 (7th Cir. July 17, 2007) (citing *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002)). Under the direct method, a plaintiff can defeat summary judgment by presenting either direct or circumstantial evidence demonstrating that she engaged in protected activity "and as a result suffered the adverse employment action of which [s]he complains . . ."[16] *Sylvester v. SOS Children's Vills. Ill. Inc.*, 453 F.3d 900, 902 (7th Cir. 2006).

Under the indirect method, retaliation claims, like other discrimination claims, follow the *McDonnell Douglas* model as clarified by the Seventh Circuit in *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 641, 644 (7th Cir. 2002). First, the plaintiff must establish a *prima facie* case by showing that she (1) engaged in statutorily protected activity; (2) met the employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Tomanovich*, 457 F.3d at 666; *see also Stone*, 281 F.3d at 644. If this case is made, the defendant must proffer a legitimate, non-invidious reason for the adverse employment action. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004). The burden then falls

---

[16] Under one test, a plaintiff arguing under the direct method must demonstrate that she: "(1) engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) that a causal connection exists between the two." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 666 (7th Cir. 2006); *see also, e.g., Boumehdi v. Plastic Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007); *Treadwell v. Office of the Ill. Sec'y of State*, 455 F.3d 778, 781 (7th Cir. 2006).

on the plaintiff to show that the proffered reason is pretextual. *Id.*

Under both the direct and indirect methods, the plaintiff must first demonstrate that she participated in a protected activity. *Pantoja v. Am. NTN Bearing Mfg. Corp.*, No. 06-1252, 2007 WL 2230095, at *7 (7th Cir. Aug. 6, 2007). Here, METRO concedes that Bryant's participation in the sexual harassment investigation of Shade was a protected activity, even though Bryant herself was not the complaining individual. (Mem. in Supp. of Mot. for Summ. J. ("Mem. in Supp.") 14-15; Defs.' Reply to Pl.'s Resp. in Supp. of Defs.' Mot. for Summ. J. ("Reply Br.") 5.) In short, Title VII protects an employee who "has opposed *any* practice made an unlawful employment practice," 42 U.S.C. § 2000e-3(a) (emphasis added), thus affording protection to those "assisting another employee with [her] discrimination claim, as well as other endeavors to obtain the employer's compliance with Title VII." *McDonnell v. Cisneros*, 84 F.3d 256, 262 (7th Cir. 1996). Thus, Bryant did not need to complain about sexual harassment directed towards her in order to have engaged in a protected activity.

Nevertheless, Bryant still fails to establish a claim of retaliation. Bryant apparently relies on the direct method to establish her retaliation claim, as she argues that paragraphs five through seven of her verified statement are "more than an indication that [she] was arguably retaliated against."[17] (Resp. Br. 3-4.) Of course, the Court struck paragraph seven *supra*, Part II, which

---

[17] Those paragraphs provide:

5. In 2004, I participated in an investigation regarding a sexual harassment claim filed against former METRO Director Greg Shade, providing testimony on any knowledge I had regarding the allegations;

6. I was required to testify to City investigators and to METRO commission personnel about all knowledge I had regarding any sexual accusations or allegations of any manner that had come to my attention; [and]

7. During the summer of 2004, Defendant Gerald Foday in the presence of myself and other METRO staff members, threatened retaliation against any METRO employees who would make accusations of sexual impropriety against him regarding the investigation identified in paragraph 5, stating among other things that he was "going to confront the staff who

ostensibly provides Bryant with the basis for arguing that her firing was "a result of" her participation in Shade's investigation. Moreover, Bryant admitted that she has "no evidence that [she] was terminated in retaliation for [her] participation in any alleged protected activity" (Brogan V.S. Ex. A. at 18); accordingly, it is "conclusively established" that Bryant has no evidence to support her retaliation claim under the direct method.[18] *See* Fed. R. Civ. P. 36(b); *Walker*, 2006 WL 467911, at *3.

Furthermore, Bryant's case fails when considered under the indirect method, as she cannot establish a *prima facie* case of retaliation. As discussed *supra*, Part III.D.2, her two positive performance evaluations are not enough to demonstrate that she was meeting METRO's legitimate expectations at the time she was terminated. *See Peele*, 288 F.3d at 329. Moreover, Bryant presents no evidence that a similarly-situated employee who had not participated in the investigation of Shade was treated more favorably. *See Bell v. City of Chicago*, No. 03 C 2117, 2004 WL 3119014, at *16 (N.D. Ill. Dec. 20, 2004) (finding that the plaintiff "cannot prevail via the indirect method of burden-shifting under *McDonnell Douglas* because she has presented no evidence of a similarly-situated employee who did not engage in statutorily protected activity

---

made sexual allegations against him[.]"
(Bryant V.S. ¶¶ 5-7.)

[18] Even if the Court considers Bryant's evidence, her retaliation claim still fails under the direct method. In that regard, Bryant maintains in her interrogatories that she was apprised by staff members that Foday stated he would demote or terminate her due to her participation in the Shade investigation. (Gadson V.S. Ex. A at 5.) This interrogatory answer, however, is clearly based upon inadmissible hearsay that cannot be considered on a motion for summary judgment. *See Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003) (determining that the plaintiff's testimony that another employee told her about statements allegedly made by the plaintiff's manager was inadmissible hearsay and "will not overcome a motion for summary judgment").

Furthermore, Bryant's allegations in her EEOC Charge of Discrimination and her verified statement that Foday declared that he would confront staff members who made sexual allegations against him are insufficient as direct evidence that METRO fired her "as a result of" her participation in the Shade investigation. Foday merely stated that he would "confront" staff members, not that METRO would take any adverse employment action against them. Moreover, Foday's statements related not to the actual Shade investigation, but to a hypothetical investigation pertaining to Foday himself.

and was treated more favorably by the [employer]").

Even if Bryant could establish a *prima facie* case of retaliation, she does not demonstrate that METRO's proffered reason for firing her was pretextual. As discussed *supra*, Part III.D.2, METRO provides a legitimate reason for terminating Bryant, namely her refusal to accept citizen complaints and her poor oral and written communications skills. Bryant provides no evidence that this reason is "a deliberate falsehood." *Forrester*, 453 F.3d at 419.

In sum, Bryant cannot establish her claim of retaliation under either the direct method or the indirect method of proof. Accordingly, the Court now turns to Bryant's final claim.

### 4. Bryant's Defamation Claim Fails

Bryant's state law claim for defamation is based on statements that Foday and Johnson allegedly made in various Fort Wayne publications during January and February 2005. (Gadson V.S. Ex. A at 6-9.) The only specific statements Bryant provides, however, are Foday's purported statements that she "could not perform the tasks required of her" and that she "just did not meet those expectations" (Gadson V.S. Ex. A at 7), and Johnson's alleged statement that "[w]e have a responsibility to the taxpayers to uphold the law for everyone in the community and we can only do that with a qualified, skilled, professional staff[.]" (Gadson V.S. Ex. A at 8-9.) According to paragraphs ten and eleven of her verified statement, which were stricken *supra*, Part II, these statements were published in the January 28, 2005, issue of the *Journal Gazette*.

Thus, at the outset, Bryant's defamation claim stumbles over a procedural hurdle–her Tort Claim Notice was untimely, as it was served on June 13, 2007, more than two years after the date of publication. Under the Indiana Tort Claims Act ("ITCA"), "a claim against a political subdivision is barred unless notice is filed with the governing body of that political subdivision .

28

. . within one hundred eighty (180) days after the loss occurs."[19] Ind. Code § 34-13-3-8(a); *see also Wright v. Elston*, 701 N.E.2d 1227, 1233 (Ind. Ct.  App. 1998) ("If the plaintiff fails to serve a notice of a tort claim within 180 days of his loss, the suit is barred and entry of summary judgment on behalf of the defendant is appropriate." (quoting *Holtz v. Bd. of Comm'rs of Elkhart County*, 560 N.E.2d 645, 648 (Ind. 1990))). And to the extent Bryant is suing Foday and Johnson individually, she is not excused from serving a tort claim notice because "a tort action against a governmental employee for actions taken within the scope of his or her employment may impose liability on the government employer . . . ."[20] *Wright*, 701 N.E.2d at 1233.

Here, Bryant did not provide notice to the Defendants under the ITCA until more than two years after the alleged defamatory comments occurred. Moreover, Bryant's vague allegation in her interrogatory responses that the defamatory comments were "not limited to January and February 2005" does not save her from an untimely notice. *See Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("It is well established that in order to withstand summary judgment, the non-movant must allege *specific* facts . . . and may not rely on vague, conclusory allegations."). Accordingly, Bryant's defamation claim against the Defendants falls pursuant to the ITCA's notice provision.

---

[19] For purposes of Indiana Code § 34-13-3, "political subdivision" includes a commission of a city. Ind. Code § 34-6-2-110(10). Moreover, the ITCA "applies to all torts, which would include defamation . . . ." *Bienz v. Bloom*, 674 N.E.2d 998, 1003 (Ind. Ct. App. 1996).

[20] Bryant is ostensibly asserting defamation claims against Foday and Johnson in both their individual and official capacities. However, a lawsuit alleging that an employee acted within his official capacity "bars an action by the claimant against the employee personally." Ind. Code § 34-13-3-5(b).
    Moreover, "a lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Ind. Code § 34-13-3-5(c).
    Accordingly, Bryant's individual capacity claims against Foday and Johnson are barred because of her alleged official capacity claims against them and because she has failed to allege, let alone establish, any of the factors delineated in Ind. Code § 34-13-3-5(c).

Finally, and laying aside the question of whether the statements could even be considered defamatory, Bryant has admitted that she has no evidence that any false statements were even made by the Defendants, *see Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 457 (Ind. 1999) ("In order to impose liability for defamation, the United States Constitution requires a false statement of fact."); accordingly, with this fact "conclusively established," Bryant's defamation claim fails as a matter of law. *See* Fed. R. Civ. P. 36(b); *Kasuboski*, 834 F.2d at 1350; *Walker*, 2006 WL 467911, at *3.

### IV. CONCLUSION

For the foregoing reasons, the Defendants' motion to strike (Docket # 25) and motion for summary judgment (Docket # 16) are GRANTED. The Clerk is directed to enter a judgment in favor of the Defendants and against Bryant.

SO ORDERED.

Enter for August 28, 2007.

S/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge